UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20097-CR-GOLD/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BOBBY WASHINGTON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on [Defendant Bobby Washington's] Motion to Suppress All Items Seized (D.E. 22) filed on May 25, 2007. On May 28, 2007, this motion was referred to the undersigned for appropriate proceedings by the Honorable Alan S. Gold pursuant to 28 U.S.C. § 636(b). Thereafter, the undersigned conducted an evidentiary hearing on this motion on June 19, 2007. Based on the facts as found herein and applicable law, the undersigned recommends that defendant's motion to suppress be DENIED for reasons stated below.

## FINDINGS OF FACT[1]

On July 27, 2005, Detective Carl Baaske of the Miami-Dade Police Department set up surveillance on a residence located at 4010 N.W. 18th Avenue, Miami, Florida (the

---

[1] These factual findings are based on the testimony of Detective Carl Baaske of the Miami-Dade Police Department and surveillance photographs introduced by the government at the suppression hearing. No other witnesses testified at the hearing.

"subject residence") based on information obtained from a confidential source that illegal narcotics sales were being conducted at that location. At approximately 5:00 p.m., Detective Baaske observed a black male, later identified as defendant Bobby Washington, exit the front door of the residence, look up and down the street, and then enter a vehicle and drive twice around the block before returning to the residence. Detective Baaske suspected that defendant was conducting "counter-surveillance" based on his extensive experience with persons engaged in unlawful narcotics transactions. Detective Baaske then watched as defendant re-entered the subject residence.

Shortly thereafter, another vehicle (a red Mustang) drove up to the subject residence where the passenger exited and walked to the front door while the vehicle remained in the street. Detective Baaske observed that person make contact with defendant at or near the front door and show him a bag containing suspected cocaine. Defendant, in turn, showed a bundle of currency to the visitor after which both men entered the subject residence. The driver of the red Mustang then parked the automobile and also entered the residence.

A few minutes later, both visitors left the subject residence, returned to their vehicle, and appeared to count a large bundle of currency. The vehicle then left the location while Detective Baaske called for uniform officers to stop the vehicle. The vehicle was stopped a short distance down the street within view of the subject residence.

Following the stop, defendant exited the residence and appeared to observe the activity down the street. Defendant moved quickly back into and out of the residence before driving away in his own vehicle. Defendant's vehicle was subsequently stopped by another police vehicle following a short chase. Defendant was taken into custody and brought back to the location of the first vehicle stop where the other two men were being

detained. Detective Baaske also came to that location and asked the three men about the subject residence and keys for the house. All three men denied any knowledge of the residence but Detective Baaske was able to retrieve a key from defendant while asking for consent to search the house. Defendant refused to grant consent but continued to insist that he had not come from the residence.

Detective Baaske returned to the subject residence and looked inside through a window next to the front door. Detective Baaske observed plastic bags containing a white powder which he suspected to be cocaine on a table in the room. Detective Baaske was concerned that other persons might still be in the house who might conceal or destroy this evidence. For that reason, Detective Baaske and other police officers entered the residence with the key provided by defendant to conduct a security sweep for other persons possibly inside. The officers found no one there. Detective Baaske and the other officers then exited the residence, seizing no items, and proceeded to obtain a search warrant while securing the residence from the outside.

The officers later re-entered the subject residence with a search warrant issued by a state judicial officer and seized narcotics, a firearm and other items expected to be introduced in this case.

## **ANALYSIS**

Defendant moves to suppress all evidence seized from the subject residence on the ground that the police officers conducted an unlawful entry and search of the premises without a search warrant in violation of his rights under the Fourth Amendment. Defendant argues that the initial unlawful search was then followed by a search with a warrant which was obtained without disclosing the warrantless entry and which lacked probable cause. Finally, defendant argues that this search and seizure were "unconstitutional" because there was no probable cause to arrest him that day.

The government opposes defendant's motion on the basis that the initial entry of the residence was solely for a security sweep which was justified by exigent circumstances and the possible destruction of evidence. The government notes that the officers knew that drugs and other evidence were inside the residence from observations made through a window outside the home. The government further notes that no information obtained during the brief security sweep was thereafter used to obtain the search warrant; and that defendant was arrested on probable cause totally apart from the probable cause determination by the state court officer for issuance of the search warrant of the residence.

Reviewing the facts and applicable law, the undersigned finds no basis to suppress any evidence found in the subject residence. On similar facts, the Eleventh Circuit in *United States v. Martinez*, 2006 WL 2034648 (C.A. 11 Fla.) (unpublished opinion), found that exigent circumstances justified the warrantless entry of a defendant's residence to secure the premises and prevent the possible destruction of evidence after defendant was arrested at a nearby motel. The court first noted that "[e]xigent circumstances arise when

authorities have reason to believe that evidence is in danger of being destroyed or removed." *United States v. Mikell*, 102 F.3d 470, 478 (11th Cir. 1996). The court then found that the agents entering defendant's home had reason to believe that narcotics evidence was in danger of being destroyed because the defendant, once aware that his drug deal had failed, could have used a cell phone to call his residence and order the drugs destroyed. The court noted that the invocation of exigent circumstances "is 'particularly compelling in narcotics cases' because narcotics can be quickly destroyed." *Mikell*, 102 F.3d at 475 (quoting *United States v. Young*, 909 F.2d 442, 446 (11th Cir. 1990)). Finally, the court noted that the agents entered the residence simply to make sure that no one was hiding inside who could have destroyed the evidence, and then waited outside the residence until a search warrant was obtained.

The facts of this case are remarkably similar to those in *Martinez*. Here, the officers observed what appeared to be a drug sale by defendant outside his residence which was confirmed once they stopped the red Mustang and detained its occupants who had participated in the sale. Defendant then left the residence, apparently aware of the vehicle stop down the street, and was arrested shortly thereafter following a chase by police officers. Thereafter, the officers observed plastic bags containing a white powder thought to be cocaine through a window of the subject residence. Not knowing whether the house was still occupied, and concerned about the possible destruction of evidence by others in the house, the officers entered the residence without a warrant simply to look for other persons inside. They then exited the residence and secured it from the outside before obtaining a search warrant based on facts totally independent of the warrantless entry.

Here, as in *Martinez*, exigent circumstances justified the warrantless entry to prevent the possible destruction of evidence and this entry did not constitute an illegal search under the Fourth Amendment.

Defendant's remaining arguments do not help his cause. The fact that the search warrant affidavit made no reference to the warrantless entry and relied solely on facts known independent of that entry only supports the government's position that the warrantless entry was no invasion of defendant's Fourth Amendment rights. *See Segura v. United States*, 468 U.S. 796, 813-14 (1984) (whether an initial entry to secure a premises was illegal or not was irrelevant to the admissibility of challenged evidence where there was an independent source for a subsequent search warrant under which the evidence was seized). Also, the probable cause determination by the state judicial officer was based on facts concerning the likelihood of drug evidence inside the residence and not on facts establishing probable cause to arrest defendant at that time. Consequently, probable cause to arrest defendant, clearly established on the facts found herein, had no bearing on the state officer's decision to issue the search warrant for the subject residence.

## **RECOMMENDATION**

For all of the foregoing reasons, the undersigned finds no violation of defendant's Fourth Amendment rights under the facts of this case. Consequently, the undersigned recommends that Defendant's Motion to Suppress Evidence be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Alan S. Gold, United States District Judge, within ten (10) days of the receipt. See 28 U.S.C. § 636(b)(1)( c); United States v. Warren, 687 F.2d 347 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983); Hardin v. Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn, 474 U.S. 140 (1985).

RESPECTFULLY SUBMITTED at Miami, Florida this 22nd day of June, 2007.

Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:

Honorable Alan S. Gold

All counsel of record